IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| NAUTILUS INSURANCE COMPANY | : | CIVIL ACTION |
|---|---|---|
| | : | |
| v. | : | No. 16-4839 |
| | : | |
| BIKE & BUILD, INC., et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                    **October 17, 2018**

In this declaratory judgment action, Plaintiff Nautilus Insurance Company seeks a declaration that it has no duty to defend or indemnify Bike & Build, Inc., to which Nautilus issued a commercial general liability policy, in connection with a lawsuit filed against Bike & Build by Bridget Anderson. Defendant/Crossclaimant United Specialty Insurance Company, Bike & Build's excess insurer, seeks similar relief. Bike & Build seeks the opposite: a declaration that both insurers are required to defend and indemnify it in the underlying lawsuit and to provide coverage for Anderson's claims. All parties have moved for summary judgment.

The facts giving rise to the underlying lawsuit are undeniably tragic. In that lawsuit, Anderson seeks damages for serious injuries she sustained when she was struck by a car while participating in a cross-country charity bike trip organized by Bike & Build. The other rider who was struck along with Anderson was pronounced dead at the scene of the accident. Anderson alleges Bike & Build was negligent and grossly negligent in the planning, operation, and execution of the bike ride, including the selection of the route for the ride, which Anderson contends exposed riders to an unreasonable risk of harm from passing vehicles.

The coverage issues in this case turn on the applicability of certain exclusions in the Nautilus and United Specialty insurance policies. Because the Court finds two of those exclusions—the Auto Exclusion in the Nautilus Policy and the Athletic or Sports Participants

Exclusion in the United Specialty Policy—unambiguously preclude coverage for the claims in the underlying lawsuit, summary judgment will be granted in favor of Nautilus and United Specialty. Bike & Build's motion for summary judgment will be denied.

**FACTS**[1]

Bike & Build is a nonprofit corporation whose core mission is to benefit affordable housing and empower young adults for a lifetime of service and civic engagement through service-oriented cycling trips. *See* Nautilus Ex. D (hereinafter "Collins Dep.") 34-35; Nautilus Ex. C (hereinafter "Villere Dep") 92-93, 120, 265. Bike & Build accomplishes its mission by organizing cycling trips in support of affordable housing. *See* Collins Dep. 35-36; Villere Dep. 246-47. Prospective riders apply to participate in a Bike & Build cycling trip, Villere Dep. 61; Nautilus Ex. E, and must commit to raise a certain amount of money, typically $4,500, by the start of the trip, Collins Dep. 36; Nautilus Ex. E at NAUT 000179. The funds raised by riders support the riders' participation in Bike & Build's cycling trips. *See* Collins Dep. 55 (noting riders "rais[e] money for themselves to go on the trip"), 89; Villere Dep. 101. Bike & Build also uses funds raised by riders to make grants and contributions to affordable housing organizations selected by riders and for its own overhead. *See* Villere Dep. 101; Collins Dep. 54-55, 67-68, 89. Approximately 90 percent of Bike & Build's funds are generated by its riders.[2] Villere Dep. 101.

Bike & Build's cycling trips are led by trip leaders who are Bike & Build employees. *See*

---

[1] On a motion for summary judgment, a court must "view the facts in the light most favorable to the non-moving party and must make all reasonable inferences in that party's favor." *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). Except where otherwise specifically noted, the following facts are undisputed.

[2] Bike & Build uses 35-45% of these funds to support riders on the road, 35-45% to make grants and contributions to affordable housing organizations, and 13-18% for overhead. Villere Dep. 101.

*id.* at 94; Collins Dep. 39-40.    Bike & Build determines the routes for the trips, including where

riders will stop along the route for overnight stays.    *See* Villere Dep. 55-59.    During cycling trips,

Bike & Build provides riders with overnight accommodations and food, though riders also have

the option of staying with friends or family or eating on their own.    *See id.* at 59-60; Collins Dep.

86.    While on a trip, riders stop periodically to volunteer at housing build sites.    *See* Villere Dep.

270, Ex. I at BIKE0001172-73.    Riders are also expected to follow Bike & Build's rules and to

perform chores necessary to make the trip function, such as cleaning up the overnight location,

shopping for groceries, or making presentations regarding affordable housing or bike safety.    *See*

Collins Dep. 40-41, 61, 95; Nautilus Ex. I at BIKE0001169, BIKE0001172, BIKE0001249-54.

In the summer of 2015, Bridget Anderson participated in a cross-country cycling trip

organized by Bike & Build which originated in Portland, Maine, in June 2015 and was to end in

Santa Barbara, California, on August 30, 2015 (hereinafter "the ME2SB trip").    Nautilus Ex. G

(hereinafter "Anderson Dep.") 41-42, 44, 64.    Anderson had applied to participate in the trip

seven months earlier in November 2014, *id.* at 64, and in the months leading up to the June

departure date, she engaged in fundraising to support the trip, ultimately raising approximately

$9,200 in charitable donations for affordable housing.[3]    *Id.* at 15, 104.

On July 30, 2015, while riding through the State of Oklahoma on Oklahoma State Highway

152 as part of the ME2SB trip, Anderson and another rider were struck by a motor vehicle driven

by Sarah Morris.[4]    *See id.* at 45, 58, 60, 66-67.    The collision catapulted Anderson from her

---

[3] As the website through which donors could make contributions in support of Anderson's trip
remained active while she was on the trip, some of the money Anderson raised may have been
donated after the start of the trip.    *See* Anderson Dep. 15-16.

[4] Anderson and the other rider were the designated "sweep" riders on the date of the accident,
riding some distance behind the other riders and carrying additional bike repair supplies and a
medical kit so as to be able to assist earlier riders who experienced a mechanical or medical

bicycle into the air and threw her approximately 156 feet, causing her to sustain serious injuries, including open knee dislocation and vascular injury to the left knee, grossly contaminated wound secondary to vascular injury, lateral condyle fracture, popliteal vascular injury, left foot metatarsal fracture, and L-3 spine fracture.   Bike & Build Ex. G (hereinafter "Underlying Compl.") ¶¶ 15, 22; Anderson Dep. 61-62.   Anderson has undergone at least eleven surgeries for her injuries to date.   Anderson Dep. 61.   The other rider who was struck along with Anderson was pronounced dead at the scene of the accident as a result of his injuries.   Underlying Compl. ¶ 16.   Morris was not affiliated in any way with Bike & Build, and Bike & Build had no ownership interest in the vehicle Morris was driving at the time of the accident.

On July 31, 2015, the day after the accident, Bike & Build notified its general liability carrier, Nautilus, of the accident.   Villere Dep. 284; Bike & Build Ex. L.   A few weeks later, on August 17, 2015, Nautilus sent a reservation of rights (ROR) letter to Bike & Build, advising that Nautilus was investigating the matter to determine whether the commercial general liability policy it issued to Bike & Build (the Nautilus Policy) provided coverage for Anderson's injuries or the other rider's death as a result of the accident.[5]

The Nautilus Policy includes the following grant of coverage for bodily injury and property damage liability, referred to in the Policy as "Coverage A":

---

problem.   Anderson Dep. 49-50, 55; *see also* Nautilus Ex. I at BIKE0001252.   The sweep role is a Bike & Build-created position that was shared among the riders on the ME2SB trip on a rotating basis, as assigned by the trip leaders.   Anderson Dep. 53-54; *see also* Villere Dep. 134.

[5] There are two different versions of the August 17, 2015, letter in the record, one signed and one unsigned.   *See* Bike & Build Ex. M; Nautilus Resp. Ex. C.   The parties dispute which version was actually sent to Bike & Build, and the Court therefore discusses both versions herein. Because this initial August 17, 2015, ROR letter is relevant to Bike & Build's argument for coverage, the Court assumes as true Bike & Build's assertion that the unsigned version of the letter was sent in evaluating Nautilus and United Specialty's motions for summary judgment.

> We will pay those sums that the insured [i.e., Bike & Build] becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

Bike & Build Ex. D at BIKE0001464. The Policy specifies the insurance provided by Coverage A applies to bodily injury if the bodily injury (1) "is caused by an 'occurrence,'" i.e., an accident, "that takes place in the 'coverage territory,'" which includes the United States; (2) "occurs during the policy period," i.e., May 7, 2015, to May 7, 2016; and (3) was not known by the insured to have occurred before the policy period. *Id.* at BIKE0001464; *see also id.* at BIKE0001451, 0001475, 0001477. The insurance provided in Coverage A is subject to numerous exclusions, some of which are set forth in the body of the form Policy and some of which are set forth in separate endorsements appended to the form Policy.

In the August 17, 2015, ROR letter, Nautilus noted that although Anderson and the other rider appeared to have suffered "bodily injury" caused by an "occurrence," as required to trigger the Policy's bodily injury liability coverage, there were certain endorsements to the Policy that might restrict coverage for the riders' injuries and damages. Bike & Build Ex. M; Nautilus Response Ex. C. In the signed version of the letter, Nautilus identified two specific endorsements that could result in a denial of coverage: (1) an endorsement captioned "EXCLUSION – INJURY TO EMPLOYEES, CONTRACTORS, VOLUNTEERS AND WORKERS" (the Volunteer Worker Exclusion), and (2) an endorsement captioned "EXCLUSION – PARTICIPANTS" (the Participant Exclusion). Nautilus Resp. Ex. C. The unsigned version of the letter identified the Volunteer Worker and Participant Exclusions as well as a third endorsement, captioned "EXCLUSION – AIRCRAFT, AUTO OR WATERCRAFT" (the Auto Exclusion), which could result in a denial of coverage. Bike & Build Ex. M. On September 11,

2015, Nautilus sent a revised ROR letter to Bike & Build. Nautilus Resp. Ex. D. The revised ROR letter mentioned all three of the endorsements that Nautilus believed could result in a denial of coverage, and included an expanded discussion of the Auto Exclusion.[6] The revised ROR letter differed from the initial ROR letter primarily with respect to the discussion of the Auto Exclusion, which was either new altogether or expanded, depending on which version of the August 17, 2015, ROR letter was sent.

On October 16, 2015, Nautilus sent a disclaimer letter to Bike & Build, setting forth its position that the Nautilus Policy did not provide coverage for claims by Anderson relating to the accident. *See* Nautilus Resp. Ex. E. The disclaimer letter again cited the Auto, Volunteer Worker, and Participant Exclusions, advising that all three Exclusions precluded coverage for claims by Anderson. *See id.*

In June 2016, Anderson filed a complaint against Bike & Build in the Court of Common Pleas of Philadelphia County, seeking damages for the injuries she sustained during the ME2SB trip (the Underlying Action). The complaint in the Underlying Action alleged that while riding her bicycle on a narrow highway in Oklahoma as part of the ME2SB ride, on a route that had been planned, set up, and supervised by Bike & Build, Anderson was struck by a vehicle driven by Morris, causing her to sustain multiple serious injuries. *See* Underlying Compl. ¶¶ 5, 8, 11-15, 22, 24. The complaint further alleged Bike & Build was negligent and grossly negligent with

---

[6] As discussed in greater detail below, the unsigned version of the ROR letter stated the Auto Exclusion might preclude coverage for bodily injury suffered by Anderson if the bicycle she was using at the time of the accident was considered to be an "auto" under Oklahoma law. *See* Bike & Build Ex. M at NAUT 00219. In the revised ROR letter sent on September 11, 2015, Nautilus offered an expanded analysis of the Auto Exclusion, noting that coverage might be precluded because "[t]he subject incident involved an 'auto' that was operated by Sarah Morris which hit . . . Ms. Anderson, which may constitute ownership or use of any 'auto,'" among other reasons. *See* Nautilus Resp. Ex. D at BIKE0002748.

respect to the planning, operation, and execution of the ME2SB trip, including the selection of a dangerous route for the trip, and that Bike & Build's negligence was the cause of Anderson's injuries. *See id.* ¶¶ 21, 23.

After receiving Anderson's complaint, Nautilus sent additional disclaimer letters to Bike & Build on June 6, 2016, and July 1, 2016, notifying Bike & Build it would not be providing defense or indemnification for the Underlying Action based on the same three exclusions previously invoked. Nautilus Resp. Exs. F & G.

In September 2016, Nautilus commenced this declaratory judgment action against Bike & Build, seeking a declaration that it has no obligation to defend or indemnify Bike & Build in connection with the Underlying Action or to provide coverage for claims arising out of the accident in which Anderson was injured because coverage is precluded under the Auto, Volunteer Worker, and Participant Exclusions in the Nautilus Policy. Nautilus also named Anderson and United Specialty Insurance Company (Bike & Build's excess insurer) as Defendants. United Specialty, in turn, asserted a crossclaim against Bike & Build, seeking a declaration that it has no obligation to defend or indemnify Bike & Build for the Underlying Action under the commercial excess liability policy it issued to Bike & Build (the United Specialty Policy), which follows form to the controlling underlying Nautilus Policy.[7] And Bike & Build asserted a counterclaim against

_____

[7] The United Specialty Policy provides that "[t]he insurance provided under this Coverage Part will follow the same provisions, exclusions and limitations that are contained in the applicable 'controlling underlying insurance' [i.e., the Nautilus Policy], unless otherwise directed by this insurance." United Specialty Ex. G at USIC000010. The United Specialty Policy is subject to any "exclusions applicable to any 'controlling underlying insurance,'" unless those exclusions are superseded by an exclusion in the United Specialty Policy. *Id.* at USIC000011. In the event of a conflict between a provision of the United Specialty Policy and the Nautilus Policy, the United Specialty Policy controls; however, the coverage under the United Specialty Policy "will not be broader than that provided by the applicable 'controlling underlying insurance'." *Id.* at USIC000010.
As discussed below, the United Specialty Policy includes a separate "Employer's

Nautilus and a crossclaim against United Specialty, seeking a declaration that both insurers are obligated to defend and indemnify Bike & Build in connection with the Underlying Action and to provide coverage for claims arising out of the accident in which Anderson was injured.[8]

On December 29, 2016, while this action was pending, Anderson and Bike & Build entered into a Settlement Agreement in the Underlying Action. Under the terms of the Agreement, Bike & Build assigned to Anderson all claims and causes of action it had against Nautilus, United Specialty, or its insurance broker, and the parties agreed to enter into a consent judgment in the amount of $10 million to be filed in the Underlying Action. Bike & Build Ex. I ¶¶ 2, 4. The parties further agreed that the proceeds from any action or lawsuit against Nautilus, United Specialty, or Bike & Build's insurance broker would be the sole recourse available to Anderson for her claims in the Underlying Action. *Id.* ¶ 4. Pursuant to the Settlement Agreement, Anderson's counsel assumed representation of Bike & Build in this action in February 2017.

Following discovery, Nautilus, United Specialty, and Bike & Build each moved for summary judgment. Nautilus and United Specialty argue summary judgment is warranted because the claims asserted in the Underlying Action fall entirely within the scope of the Nautilus Policy's Auto, Volunteer Worker, and/or Participant Exclusions. United Specialty also argues

---

Liability" exclusion (the Employee Exclusion), which is similar, but not identical, to the Volunteer Worker Exclusion in the Nautilus Policy, *see id.* at USIC000035, 000029, and a separate exclusion for "Athletic or Sports Participants" (the Athletic or Sports Participants Exclusion), which is similar, but not identical, to the Participant Exclusion in the Nautilus Policy, *see id.* at USIC000026. United Specialty alleges coverage for the Underlying Action is precluded by the Auto, Volunteer Worker, and Participant Exclusions in the Nautilus Policy as well as by the Employee and Athletic or Sports Participants Exclusions in the United Specialty Policy.

[8] Anderson also asserted a counterclaim against Nautilus, seeking a declaration that Nautilus was obligated to defend and indemnify Bike & Build in the Underlying Action and to provide coverage for claims arising out of the accident. As of February 2017, however, Anderson has pursued Bike & Build's claims against Nautilus and United Specialty pursuant to an assignment of the claims executed as part of her settlement with Bike & Build.

the claims in the Underlying Action fall entirely within the scope of the Employee and Athletic or Sports Participants Exclusions in the United Specialty Policy. Bike & Build argues it is entitled to a defense and indemnity under the Nautilus and United Specialty Policies because Underlying Action seeks damages for bodily injury caused by an occurrence, and none of the policy exclusions on which Nautilus and United Specialty rely unambiguously excludes coverage for the claims in the Underlying Action.

## DISCUSSION

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material" facts are those facts "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the [non-moving] party." *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, "the non-moving party must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for the [non-movant]." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (alteration in original) (citation and internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

In evaluating a motion for summary judgment, a court must "view the facts in the light most favorable to the non-moving party and must make all reasonable inferences in that party's favor." *Hugh*, 418 F.3d at 267. Where, as here, cross-motions for summary judgment are filed, "the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (alteration omitted) (quoting 10A Charles Alan Wright et al., *Federal Practice & Procedure* § 2720 (3d ed. 2016)).

Under Pennsylvania law, which the parties agree governs the policies at issue in this case, "[t]he interpretation of an insurance policy is a question of law." *Kvaerner Metals Civ. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006). In interpreting an insurance policy with respect to the existence or nonexistence of coverage, a court must "look first to the terms of the policy which are a manifestation of 'the intent of the parties.'" *Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*, 562 F.3d 591, 595 (3d Cir. 2009) (citation omitted). "When the language of the policy is clear and unambiguous, [the court must] give effect to that language." *Kvaerner*, 908 A.2d at 897 (quoting *401 Fourth Street v. Investors Ins. Co.*, 879 A.2d 166, 170 (Pa. 2005)). When a provision in the policy is ambiguous, however, the court must construe the policy "in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage." *Id.* (quoting *401 Fourth Street*, 879 A.2d at 170). "Ambiguity exists where the language of the [policy] is 'reasonably susceptible of different constructions and capable of being understood in more than one sense.'" *Gen. Refractories Co. v. First State Ins. Co.*, 855 F.3d 152, 159 (3d Cir. 2017) (quoting *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999)).

The court must next "compare the terms of the policy to the allegations in the underlying

claim." *CPB Int'l*, 562 F.3d at 595. An insurer's "duty to defend and indemnify an insured in a suit brought by a third party depends upon a determination of whether the third party's complaint triggers coverage." *Kvaerner*, 908 A.2d at 896 (quoting *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999)). In making this determination, the court must take the factual allegations of the underlying complaint against the insured as true and liberally construe those allegations in favor of the insured. *CPB Int'l*, 562 F.3d at 596. The duty to defend is broader than the duty to indemnify and "arises whenever an underlying complaint may 'potentially' come within the insurance coverage." *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999). If the insurer does not have a duty to defend its insured in the underlying action, the insurer also has no duty to indemnify. *See CPB Int'l*, 562 F.3d at 595 n.3; *Kvaerner*, 908 A.2d at 896 n.7.

The existence of coverage in this case hinges on the applicability of the various policy exclusions identified by Nautilus and United Specialty—the Auto, Volunteer Worker, and Participant Exclusions in the Nautilus Policy and the Employee and Athletic or Sports Participants Exclusions in the United Specialty Policy—to the claims asserted by Anderson in the Underlying Action. Although the insured "bears the burden of demonstrating that its claim falls within the policy's affirmative grant of coverage,"[9] where, as here, "an insurer seeks to disclaim coverage on the basis of a policy exclusion[,] . . . the insurer bears the burden of proving the applicability of the

---

[9] As noted, the Nautilus Policy provides coverage for sums Nautilus becomes legally obligated to pay as damages because of bodily injury caused by an occurrence (or accident) that takes place during the policy period, and requires Nautilus to defend Bike & Build against any suit seeking such damages, unless the claims are otherwise excluded under the Policy. *See* Bike & Build Ex. D at BIKE 0001464, 0001477. Nautilus has repeatedly acknowledged that Anderson suffered "bodily injury" resulting from an "occurrence," but has taken the position the coverage is precluded under various Policy exclusions. *See, e.g.*, Nautilus Resp. Ex. F at BIKE0002754; Nautilus Resp. Ex. G at BIKE0002793.

exclusion as an affirmative defense." *Gen. Refractories Co.*, 855 F.3d at 158. Exclusions in an

insurance policy "are strictly construed against the insurer." *Selko v. Home Ins. Co.*, 139 F.3d

146, 152 n.3 (3d Cir. 1998); *see also Mut. Benefit Ins. Co. v. Politsopoulos*, 115 A.3d 844, 852 n.6

(Pa. 2015).

### A. The Auto Exclusion

The Auto Exclusion is set forth in a separate endorsement to the Nautilus Policy and

provides, in relevant part, as follows:

> Exclusion **g. Aircraft, Auto Or Watercraft** under Paragraph **2., Exclusions** of
> **Section I – Coverage A – Bodily Injury and Property Damage Liability** is
> **replaced** by the following:
>
> **2. Exclusions**
>
> This insurance does not apply to:
>
> **g. Aircraft, Auto Or Watercraft**
>
> > "Bodily injury" or "property damage" arising out of the ownership,
> > maintenance, use or entrustment to others of any aircraft, "auto" or
> > watercraft. Use includes operation and "loading or unloading".
> >
> > This exclusion applies even if the claims allege negligence or other
> > wrongdoing in the supervision, hiring, employment, training or
> > monitoring of others, if the "occurrence" which caused the "bodily
> > injury" or "property damage" involved the ownership, maintenance,
> > use or entrustment to others of any aircraft, "auto" or watercraft.

Bike & Build Ex D at BIKE0001489. The Policy defines the term "auto" to include, inter alia,

"[a] land motor vehicle . . . designed for travel on public roads." *Id.* at BIKE0001475.

As noted in the prefatory language in the endorsement, the Auto Exclusion set forth therein

replaces an identically titled exclusion in the form Policy, which provides that the insurance in

Coverage A does not apply to:

> **g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft *owned or operated by or rented or loaned to any insured*. Use includes operation and "loading or unloading."

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft *that is owned or operated by or rented or loaned to any insured*.

*Id.* at BIKE0001467 (emphasis added). Whereas the version of the exclusion in the form Policy precludes coverage for "'bodily injury' . . . arising out of the . . . use . . . of any . . . 'auto'" only if the auto in question was "owned or operated by or rented or loaned to" the insured, the operative Auto Exclusion in the endorsement precludes coverage for "'bodily injury' . . . arising out of the . . . use . . . of any . . . 'auto.'"

Nautilus argues the Auto Exclusion unambiguously precludes coverage for bodily injury arising out of the use or operation of any motor vehicle, even if the vehicle was neither owned nor operated by insured at the time of the accident. Thus, in Nautilus's view, the Auto Exclusion precludes coverage for Anderson's claims against Bike & Build in the Underlying Action because those claims seek damages for bodily injury Anderson sustained when she was struck by the motor vehicle Morris was using and operating.

Bike & Build argues Nautilus should be estopped from arguing the Auto Exclusion precludes coverage for the Underlying Action because Nautilus previously took the position, in the initial ROR letter it sent to Bike & Build, that the Exclusion would apply only if the bicycle Anderson was riding at the time of the accident was considered an "auto" under Oklahoma law. Bike & Build maintains that by suggesting the applicability of the Auto Exclusion was dependent upon the equipment being used by Anderson, Nautilus conceded the fact that a third party involved

in the accident was using a motor vehicle was irrelevant, and should not now be permitted to argue to the contrary. Bike & Build also disputes Nautilus's interpretation of the Auto Exclusion, arguing (1) adopting Nautilus's broad construction would defeat Bike & Build's reasonable expectation that the Auto Exclusion would apply only to Bike & Build's own use, operation, or entrustment of a motor vehicle, and (2) at a minimum, the Auto Exclusion is ambiguous as to whether it applies only to Bike & Build's own use, operation, or entrustment of a motor vehicle.

Bike & Build's estoppel argument is meritless. Nautilus's initial ROR letter was sent on August 17, 2015, more than nine months before Anderson filed the Underlying Action, and the letter advised Bike & Build that Nautilus was conducting an investigation of the matter and "d[id] not intend to waive its rights or conditions under the [P]olicy."[10] Bike & Build Ex. M at NAUT 00214. While Nautilus's current position regarding the Auto Exclusion was not reflected in the initial ROR letter, Nautilus sent an amended ROR letter to Bike & Build less than a month later, on September 11, 2015, advising that the Auto Exclusion might preclude coverage for Anderson's injuries because, inter alia, "[t]he subject incident involved an 'auto' that was operated by Sarah Morris which hit . . . Ms. Anderson, which may constitute ownership or use of any 'auto.'" Nautilus Resp. Ex. D at BIKE0002748. This coverage position is also reflected in Nautilus's October 16, 2015, disclaimer letter advising Bike & Build there was "no coverage for Ms. Anderson's claims" under the Auto Exclusion since those claims "arose out of use of an 'auto.'" Nautilus Resp. Ex. E, at BIKE0002808.

Under Pennsylvania law, "[t]o work an estoppel, there must be such conduct on the part of the insurer as would, if the insurer were not estopped, operate as a fraud on some party *who has*

---

[10] This same language also appears in the signed version of the August 17, 2015, ROR letter, which does not mention the Auto Exclusion. Nautilus Resp. Ex. C at BIKE0002820.

*taken or neglected to take some action to his own prejudice in reliance thereon.*"  *Wasilko v. Home Mut. Cas. Co.*, 232 A.2d 60, 63 (Pa. Super. Ct. 1967) (emphasis added) (quoting 16 Appleman, *Insurance Law* § 9088, at 626); *see also Mendel v. Home Ins. Co.*, 806 F. Supp. 1206, 1215 (E.D. Pa. 1992) ("[I]n the context of an insurer's failure to assert all possible defenses to coverage, the courts apply an estoppel only when there is actual prejudice, that is, when the failure to assert all possible defenses causes the insured to act to his detriment in reliance thereon."). Bike & Build does not suggest it was prejudiced in any way by Nautilus's failure to advance its current interpretation of the Auto Exclusion in its initial ROR letter—nor could it, given Nautilus's prompt amendment of the ROR letter and issuance of a disclaimer letter to Bike & Build, all of which occurred months before Anderson filed suit.   The Court therefore concludes Bike & Build is not estopped from relying on the Auto Exclusion.[11]

Turning to the scope of the Auto Exclusion, the Court agrees with Nautilus that the Exclusion unambiguously precludes coverage for the claims in the Underlying Action.   As an initial matter, the Court rejects Bike & Build's argument that the Exclusion is ambiguous as to whether it applies only to the insured's own use, operation, or entrustment of a motor vehicle.   To determine whether a policy provision is ambiguous, a court "must examine the questionable term or language in the context of the entire policy and decide whether the contract is 'reasonably

---

[11] *Brugnoli v. United National Insurance Co.*, 426 A.2d 164 (Pa. Super. Ct. 1981), the only case cited by Bike & Build in support of its estoppel argument, does not hold to the contrary.   In fact, consistent with the cases cited above, the court in *Brugnoli* recognized "[i]t is an essential element of estoppel that the person invoking it has been influenced by or has relied upon the representation or conduct of the person sought to be estopped."   *Id.* at 167 n.5 (quoting *Laroche v. Farm Bureau Mut. Auto. Ins. Co.*, 7 A.2d 361, 363 (Pa. 1939)).   While the court also recognized that an insurer's reservation of rights, to be effective, "must fairly inform the insured of the insurer's position and must be timely," *id.* at 167 (quoting 14 G. Couch, *Cyclopedia of Ins. Law* § 51:83 (2d ed. 1965)), nothing in the case suggests an insurer may not amend its initial coverage position, or may do so only on the basis of previously unknown facts, as Bike & Build appears to contend. *See* Bike & Build's Mem. in Supp. of Mot. for Summ. J. 20.

susceptible of different constructions and capable of being understood in more than one sense." *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997) (quoting *Gamble Farm Inn, Inc. v. Selective Ins. Co.*, 656 A.2d 142, 143-44 (Pa. 1995)). "Where there is only one reasonable interpretation of a contract, that interpretation controls because '[s]traightforward language in an insurance policy should be given its natural meaning.'" *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 419-20 (3d Cir. 2011) (quoting *Lawson v. Fortis Ins. Co.*, 301 F.3d 159, 162 (3d Cir. 2002)). The "polestar" of the court's inquiry is the language of the policy. *Madison Constr. Co.*, 735 A.2d at 106.

By its terms, the Auto Exclusion precludes coverage for "'[b]odily injury' . . . arising out of the . . . use . . . of any . . . 'auto.'" Bike & Build Ex. D at BIKE0001489. Nothing in the wording of the Exclusion limits it to bodily injury arising out of the insured's use of an auto or the use of an auto owned by the insured. Indeed, while the analogous exclusion in the form Policy includes such limitations, precluding coverage for "'[b]odily injury' . . . arising out of the . . . use . . . of any . . . 'auto' . . . *owned or operated by or rented or loaned to any insured*," *id.* at BIKE0001467 (emphasis added), that exclusion was replaced by the Auto Exclusion in the endorsement, which specifically removes these limitations. Given this change in wording, the Auto Exclusion cannot reasonably be interpreted to apply only to Bike & Build's own use, operation, or entrustment of an auto, as Bike & Build suggests.[12] *See Cyclops Corp. v. Home Ins.*

---

[12] While the deletion of limiting language from the endorsement underscores that the Auto Exclusion is not limited to the insured's use of an auto, this Court and others have interpreted similarly broadly worded auto exclusions to encompass use of an auto by anyone, even absent such a wording change. *See Allstate Prop. & Cas. Ins. Co. v. Filachek*, No. 10-3634, 2011 WL 2111219, at *2, 4 (E.D. Pa. May 25, 2011) (holding an exclusion for "bodily injury . . . arising out of the ownership . . . [or] use . . . of any motor vehicle" was "not limited to only an injury which arises from the insured's use of a motor vehicle, or the use of an insured's motor vehicle"); *accord Allstate Ins. Co. v. Naai*, 490 F. App'x 49, 50-51 (9th Cir. 2012) (holding a policy exclusion for "bodily injury 'arising out of the ownership; operation; maintenance; use; occupancy; renting;

*Co.*, 352 F. Supp. 931, 933 (W.D. Pa. 1973) (interpreting a policy endorsement in light of changes the endorsement made to the original policy language). On the contrary, the only reasonable interpretation of the Auto Exclusion, as revised, is that it is *not* limited to the insured's use of an auto. *See Countryway Ins. Co. v. Slaugenhoup*, 360 F. App'x 348, 350-51 (3d Cir. 2010) (holding the most natural reading of a farmowner's policy exclusion for "'bodily injury' . . . which results from liability imposed by law on an 'insured' for the use of a 'motorized vehicle'" was that the provision "meant to exclude all coverage for liability imposed by law as the result of motor vehicle use—by anyone," especially in light of other policy exclusions which specifically included language limiting the exclusion to the actions of the insured).[13, 14]

---

loaning; entrusting; loading or unloading' of a motor vehicle" was "not limited to the *insured's* ownership, operation, maintenance, or use of an automobile; by its terms it does not cover bodily injury arising out of the operation of *any* motor vehicle").

[13] *Accord Nautilus Ins. Co. v. 93 Lounge Inc.*, No. 14-1029, 2017 WL 1207528, at *7 (E.D.N.Y. Mar. 31, 2017) (interpreting the same Nautilus policy language at issue in this case to unambiguously "exclude claims for bodily injuries arising out of the use of an automobile," including use by third parties); *U.S. Specialty Ins. Co. v. LeBeau, Inc.*, 847 F. Supp. 2d 500, 504-05 (W.D.N.Y. 2012) (holding an endorsement which changed an auto exclusion by deleting language limiting the exclusion to any auto "owned or operated by or . . . loaned to any insured" served to "highlight and clarify the total lack of coverage for injuries arising out of the use of an automobile"); *Colony Ins. Co. v. Whelan*, No. 09-3334, 2010 WL 11596913, at *7 (N.D. Ga. Aug. 26, 2010) (holding the deletion of limiting language from an auto exclusion made clear the exclusion was not restricted to bodily injury arising out of the use of vehicles "owned or operated by or rented or loaned to any insured").

[14] In arguing the Auto Exclusion is ambiguous, Bike & Build relies on the unsigned version of Nautilus's August 17, 2015, ROR letter in which Nautilus took the position that the Exclusion might preclude coverage for Anderson's injuries if a man-powered bicycle were considered to be an "auto" under Oklahoma law. *See* Bike & Build Ex. M. at NAUT 00219. The fact that the Nautilus representative who drafted the initial ROR letter failed to identify additional reasons why the Auto Exclusion might bar coverage for Anderson's injuries does not mean the Exclusion is ambiguous. *See Daniel S. Bowerman, D.C. v. Nat'l Life Ins. Co.*, No. 13-3345, 2014 WL 7150038, at *9 (E.D. Pa. Dec. 16, 2014) (holding an "initial, early mistake" by the insurer in interpreting its policy "does not prove that the [p]olicy . . . [is] ambiguous as a matter of law"), *aff'd*, 654 F. App'x 550 (3d Cir. 2016); *cf. Viera*, 642 F.3d at 419 ("Disagreement between the parties over the proper interpretation of a contract does not necessarily mean that a contract is

It is also clear, moreover, that the claims in the Underlying Action are encompassed by the Auto Exclusion because those claims seek damages for bodily injury "arising out of" Morris's use and operation of a motor vehicle. Under Pennsylvania law, the phrase "arising out of," when used in a policy exclusion, "indicate[s] [a] 'but for' or 'cause and result' relationship." *Madison Constr. Co.*, 735 A.2d at 110 (citing *McCabe v. Old Republic Ins. Co.*, 228 A.2d 901, 903 (Pa. 1967)); *see also Essex Ins. Co. v. RMJC, Inc.*, 306 F. App'x 749, 752 (3d Cir. 2009). In determining whether an underlying complaint triggers coverage under an insurance policy, the court must "look at the factual allegations contained in the complaint." *See Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999). The particular cause of action pleaded is not determinative. *See id.*

Here, the complaint in the Underlying Action alleges that while riding her bicycle on a narrow highway in Oklahoma as part of the ME2SB trip, Anderson was struck by a vehicle driven by Morris, catapulted into the air, and thrown approximately 156 feet, causing her to sustain multiple serious injuries for which she seeks damages. *See* Underlying Compl. ¶¶ 11-15, 22, 24. Although the complaint seeks to hold Bike & Build liable for Anderson's injuries on the theory that Bike & Build was negligent and grossly negligent in planning and executing the ME2SB trip, the facts alleged in the complaint in the Underlying Action make clear that Morris's use and operation of her vehicle was a but for cause of the injuries for which Anderson seeks damages. *See Loughman v. Consol-Pa. Coal Co.*, 6 F.3d 88, 106 (3d Cir. 1993) (recognizing "there may be multiple but-for causes of a single loss"). Hence, coverage for the claims in the Underlying Action is precluded by the Auto Exclusion. *See Filachek*, 2011 WL 2111219, at *2, 4 (holding

---

ambiguous." (citation omitted)). And based on the plain language of the Exclusion, the Court concludes it is not.

the applicability of a vehicle exclusion precluding coverage for "bodily injury . . . arising out of the . . . use . . . of any motor vehicle" turned on whether the bodily injury for which liability was sought to be imposed on the insured arose out of the use of a motor vehicle, not whether the insured's liability-inducing actions arose from the use of a motor vehicle); *Wolfe v. Ross*, 115 A.3d 880, 885, 889-93 (Pa. Super. Ct. 2015) (en banc) (holding an auto exclusion for "bodily injury . . . arising out of the ownership, maintenance, use, loading or unloading of . . . a motor vehicle owned . . . by . . . any insured" precluded coverage for negligence claims against a homeowner for serving alcohol to an underage guest who became impaired, left the party on an ATV owned by the homeowner's son, and was fatally injured in a crash because the guest's injuries were caused by his use of the ATV).[15]

This interpretation is consistent with the decisions of numerous other courts applying similarly worded auto exclusions in analogous circumstances. *See, e.g.*, *LeBeau, Inc.*, 847 F. Supp. 2d at 501-02, 504 (holding a virtually identical auto exclusion precluded coverage for a suit on behalf of a pedestrian who was struck by a motor vehicle while walking near the site of an air show against the various county entities responsible for the show, alleging the defendants were

---

[15] Although Anderson's claims against Bike & Build in the Underlying Action do not concern Bike & Build's use of a motor vehicle, the use of a vehicle is nevertheless integral to those claims, which fault Bike & Build for selecting a route that posed an unreasonable risk of danger to riders from vehicles on the road. *See* Underlying Compl. ¶ 21 (alleging Bike & Build was negligent and grossly negligent for, inter alia, "[c]hoosing a route that included a roadway with a narrow shoulder . . . in which the bike rider would be in close proximity to vehicles traveling at a high rate of speed"; failing to choose a route that "included less vehicular traffic," "was not a highway," and had "a lower speed limit"; and requiring riders to travel along a highway "where there was insufficient separation between the bike riders and passing motorists" and "in which they knew motor vehicles would be traveling in excess of 55 mph in close proximity to the bike riders"); *see also Slaugenhoup*, 360 F. App'x at 352 (holding use of a vehicle was "integral" to claims against an insured for negligently tasking his elderly father with transporting a tire for repair, during which the father's vehicle struck and injured a third party, as "there could be no negligence claim against the insured but for someone's—i.e., [the father's]—'use' of a motor vehicle").

negligent in controlling motor vehicle traffic and failing to afford proper safety measures for pedestrians); *Allstate Ins. Co. v. Naai*, 684 F. Supp. 2d 1220, 1222-23, 1228, 1230 (D. Haw. 2010) (holding a policy exclusion for "bodily injury . . . arising out of the . . . use . . . of any motorized land vehicle" precluded coverage for an action against the owners of property on which children playing in a "common/playground area" were struck by a vehicle driven by a third party, alleging the owners negligently created a dangerous condition on the property), *aff'd*, 490 F. App'x 49 (9th Cir. 2012); *Markel Int'l Ins. Co. v. Urban, LLC*, No. 08-160, 2008 WL 11276681, at *2-3 (W.D. Tex. Nov. 21, 2008) (holding a similarly worded auto exclusion precluded coverage for a negligence action against two bars arising out of the death a bar patron who was struck by a car while crossing a busy street to go from one bar to the other, in which the plaintiffs sought to hold the bars liable for violating their duty to maintain safe premises).  In each of these cases, the court found claims asserted by or on behalf of an individual who was injured after being struck by an automobile driven by a third party arose out of the use of an automobile regardless of the particular theory of liability asserted against the insured.

In support of its argument that the Auto Exclusion does not apply to the Underlying Action, Bike & Build relies entirely on *Essex Insurance Co. v. City of Bakersfield*, 154 Cal. App. 4th 696 (Cal. Ct. App. 2007), a case in which a California intermediate appellate court applying California law declined to interpret a similarly worded auto exclusion in a commercial general liability policy to preclude coverage for bodily injury arising from an automobile accident between two vehicles to which the insured had no connection.  The policy at issue in *Essex* had been issued to a city to cover occurrences during a special fundraising event and was in effect for a term of only 15 days. *Id.* at 701.  During the event, a motor vehicle accident occurred a short distance from the event site when a tractor-trailer approaching the "exit only" driveway to the site jackknifed, colliding

with an oncoming automobile. *Id.* at 699-700. The injured occupants of the automobile sued the city for creating a dangerous condition during the event which contributed to the traffic accident, and the city thereafter sought coverage for the suit from the event's insurer. *See id.* at 701-02. The insurer denied the request on the basis of two auto exclusions in the policy, one of which precluded coverage for "'bodily injury' . . . arising out of, caused by or contributed to by the ownership, non-ownership, maintenance, use or entrustment to others of any 'auto.'"[16] *Id.* at 702. As in this case, the operative auto exclusion was set forth in an endorsement, which replaced a similarly worded auto exclusion in the form policy, applicable to 'bodily injury' . . . arising out of the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . owned or operated by or rented or loaned to any insured." *Id.* at 701.

Reversing the trial court's grant of summary judgment in favor of the insurer, the California appellate court held the auto exclusion did not "plainly and clearly" preclude coverage of the underlying lawsuit and that, absent evidence that the insurer's broad interpretation of the exclusion had been brought to the insured's attention, adopting the insurer's interpretation would convert the exclusion into an "unusual and unfair limitation[] of coverage that [would] defeat the insured's reasonable expectations of coverage" for the accident. *See id.* at 706-07.[17]

---

[16] The second auto exclusion was part of a "Special Events/Spectator Liability Endorsement," which precluded coverage for "'bodily injury' . . . arising out of . . . automobiles." *Essex Ins. Co.*, 154 Cal. App. 4th at 702.

[17] Although the court offered numerous reasons for its interpretation, in finding the city could reasonably have expected that the policy would provide coverage for a claim that the city created a dangerous condition of public property that led to an automobile accident, the court first found, in essence, that the auto exclusion was ambiguous. Specifically, the court found the endorsement's modification of the auto exclusion to delete the requirement that auto be "owned or operated by or rented or loaned to any insured" did not "plainly and clearly provide that there would be no coverage for cases involving autos that have no connection to the insured," in part because the deletion was accompanied by the addition of the term "non-ownership." *See id.* at 707. In the court's view, the addition of the term "non-ownership" could be "reasonably understood to replace

Bike & Build argues that, as in *Essex*, interpreting the Auto Exclusion in the Nautilus Policy to apply to any case seeking damages for bodily injury arising out of the use of an automobile by anyone would defeat Bike & Build's reasonable expectations of coverage, given that Bike & Build's greatest source of liability exposure was from injury to its riders.   Although Pennsylvania law recognizes the reasonable expectations doctrine, there is no basis to apply it here.   Under Pennsylvania law, the existence of coverage must be determined with reference to the reasonable expectations of the insured.   *See Collister v. Nationwide Life Ins. Co.*, 388 A.2d 1346, 1353 (Pa. 1978).   "In most cases, 'the language of the insurance policy will provide the best indication of the content of the parties' reasonable expectations,'" *Moessner*, 121 F.3d at 903 (quoting *Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1309 (3d Cir. 1994)); hence, an insured's "mere assertion[]" that it expected coverage "will not ordinarily defeat unambiguous policy language excluding coverage," *Matcon Diamond, Inc. v. Penn Nat'l Ins. Co.*, 815 A.2d 1109, 1115 (Pa. Super. Ct. 2003).   "However, 'even the most clearly written exclusion will not bind the insured where the insurer or its agent has created in the insured a reasonable expectation of coverage.'"   *West v. Lincoln Benefit Life Co.*, 509 F.3d 160, 169 (3d Cir. 2007) (quoting

_____

the language 'operated by or rented or loaned to any insured' given that vehicles that are rented or loaned to any insured are not vehicles that are owned by the insured." *Id.*   The court also suggested "[t]he removal of the term 'owned' c[ould] be understood as avoiding duplication since the auto exclusion already limited coverage in cases arising out of the 'ownership' of any autos." *Id.*   In other words, the court suggested the changes in the wording of the auto exclusion could reasonably be understood not to change the meaning of the provision and that an "average layperson" would therefore interpret the auto exclusion "as applying to lawsuits involving the use of or other acts relating to any 'auto' by any insured or on the insured premises." *Id.* at 707-08. The court thus concluded the city "was reasonable in expecting that [its insurer] would defend it from the claim that the [c]ity created a dangerous condition of public property that allegedly led to the automobile accident." *Id.* at 708.   Insofar as *Essex* is based on the court's finding that the auto exclusion at issue was ambiguous, the case is distinguishable, as, for the reasons explained above, the Auto Exclusion in this case is not ambiguous and is not limited to lawsuits seeking damages for bodily injury arising out of the insured's use or operation of an automobile.

*Moessner*, 121 F.3d at 903).

The Pennsylvania Supreme Court has applied the reasonable expectations doctrine in "very limited circumstances." *Madison Constr. Co.*, 735 A.2d at 109 n.8. As the Third Circuit Court of Appeals has recognized, "[a]n analysis of the reasonable expectations of the insured is rightly employed when a claimant alleges that the insurer engaged in deceptive practices toward the insured, either to misrepresent the terms of the policy or to issue a policy different than the one requested by the insured and promised by the insurer." *West*, 509 F.3d at 169; *see also Tonkovic v. State Farm Mut. Auto Ins. Co.*, 521 A.2d 920, 925 (Pa. 1987) (holding where "an individual applies and prepays for specific insurance coverage, the insurer may not unilaterally change the coverage provided without an affirmative showing that the insured was notified of, and understood, the change, regardless of whether the insured read the policy"). Absent "an affirmative misrepresentation by the insurer or its agent about the contents of the policy," however, "the plain and unambiguous terms of a policy demonstrate the parties' intent and they control the rights and obligations of the insurer and the insured." *West*, 509 F.3d at 168-69.

In arguing that applying the Auto Exclusion as written would defeat its reasonable expectation of coverage, Bike & Build relies on an assertion by Justin Villere, Bike & Build's former Director of Operations, that he thought Nautilus was providing "an office and a tour policy," which covered the riders. *See* Villere Dep. 214-16. Villere conceded, however, that he never spoke with anyone at Nautilus regarding the insurance before Anderson's claim arose and that his belief regarding the coverage provided by the Nautilus Policy was based on his communications with Bike & Build's insurance broker, Brown & Brown.[18] *See id.* at 215-16.

---

[18] Under the terms of its Broker Services Agreement with Bike & Build, Brown & Brown was to act as Bike & Build's representative for purposes of procuring insurance. *See* Nautilus Resp. Ex. M.

And while Alyssa Guerrieri, the Nautilus Underwriter for the Bike & Build Policy, stated she viewed injury to the riders as Bike & Build's greatest liability exposure, *see* Nautilus Resp. Ex. Q (hereinafter "Guerrieri Dep.") 38, Bike & Build points to no evidence that Guerrieri (or anyone at or acting on behalf of Nautilus) ever communicated to Bike & Build that the Nautilus Policy covered that risk.   On the contrary, Guerrieri confirmed that she had no direct communications with Bike & Build.   *See id.*   In the absence of any evidence suggesting that Nautilus engaged in deceptive practices toward Bike & Build to create a reasonable expectation of coverage, the Court must apply the Auto Exclusion as written to preclude coverage in this case.

Because the Auto Exclusion in the Nautilus Policy unambiguously precludes coverage for the claims in the Underlying Action, which seek damages for bodily injury to Anderson arising out of the operation of a motor vehicle, the Court finds Nautilus has no duty to defend, indemnify, or provide coverage to Bike & Build in connection with the Underlying Action.   For the same reasons, United Specialty also has no duty to defend, indemnify, or provide coverage to Bike & Build for the claims in the Underlying Action.

**B.      Volunteer Worker/Employee and Participant/Athletic or Sports Participants Exclusions**

Because the Court concludes the Auto Exclusion in the Nautilus Policy unambiguously precludes coverage for the claims in the Underlying Action, Nautilus and United Specialty are entitled to summary judgment regardless of whether coverage would also be preclude under the other exclusions they invoke.   For the sake of completeness, however, the Court addresses those additional exclusions—the Volunteer Worker and Participant Exclusions in the Nautilus Policy and the Employee and Athletic or Sports Participants Exclusions in the United Specialty Policy.

**1.      Volunteer Worker/Employee Exclusions**

The Volunteer Worker Exclusion is set forth in a separate endorsement to the Nautilus

Policy and provides, in relevant part, as follows:

> Exclusion **e. Employer's Liability** of **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is **replaced** by the following:
>
> This insurance does not apply to:
>
> **e.** **Injury to Employees, Contractors, Volunteers and Other Workers**
>
>> "Bodily injury" to:
>>
>> **(1)** "Employees", "leased workers", "temporary workers", "volunteer workers", statutory "employees", casual workers, seasonal workers, contractors, subcontractors, or independent contractors of any insured; . . .
>> . . .
>>
>> arising out of and in the course of:
>>
>>> **(a)** Employment by any insured; or
>>>
>>> **(b)** Directly or indirectly performing duties related to the conduct of any insured's business; . . .
>> . . .
>>
>> This exclusion applies:
>>
>> **(1)** Regardless of where the:
>>
>>> **(a)** Services are performed; or
>>>
>>> **(b)** "Bodily injury" occurs; and
>>
>> **(2)** Whether any insured may be liable as an employer or in any other capacity; and
>>
>> **(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Bike & Build Ex. D at BIKE0001490. The term "volunteer worker" is defined in the Policy as "a person who is not your 'employee', and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you." *Id.* at BIKE0001478.

The Volunteer Worker Exclusion replaces a similarly worded, though narrower, "Employer's Liability" exclusion in the form Policy, which precludes coverage for bodily injury to employees, but not the various other categories of workers listed in the Volunteer Worker Exclusion. *See id.* at BIKE0001465. The Volunteer Worker Exclusion thus broadens the "Employer's Liability" exclusion.

The Volunteer Worker Exclusion precludes coverage for the claims in the Underlying Action if Anderson was a "volunteer worker" for Bike & Build and sustained bodily injury arising out of and in the course of directly or indirectly performing duties related to the conduct of Bike & Build's business. Bike & Build argues the Volunteer Worker Exclusion is inapplicable because Anderson was not a "volunteer worker." Specifically, Bike & Build argues Anderson was not donating her "work" at the time of the accident but was merely riding her bike, having completed all required fundraising before the ride began. Bike & Build contends Anderson's participation in the ride cannot be regarded as "work" for Bike & Build under any reasonable definition of the term. Alternatively, Bike & Build argues the term "work" is ambiguous as applied to the circumstances of this case, noting Bike & Build's own corporate representative conceded the term "work" within the Volunteer Exclusion "could be subject to different interpretations," and admitted she did not know whether participating in the ME2SB ride constituted "work" under the Policy. *See* Nautilus Resp. Ex. H (hereinafter "Drebitko Dep.") at 84-85, 88.

Nautilus contends the complaint in the Underlying Action establishes Anderson's status as a volunteer worker, including that Anderson donated her "work" to Bike & Build by fundraising and biking as part of the ME2SB trip. Nautilus also argues the undisputed facts make clear that Anderson donated her "work" to Bike & Build, as on the day of the accident, Anderson was serving as a sweep rider, a position she had been assigned by Bike & Build, and was representing

Bike & Build in "pedaling for affordable housing" while wearing a Bike & Build jersey, as she was required to do. *See* Nautilus Opp'n 13. Nautilus disputes that the term "work" is ambiguous, arguing Anderson's activities at the time of the accident—riding her bike as part of the "charity ride" and serving as "sweep"—fall within the commonly understood meaning of the term "work."

The term "work" is not defined in the Nautilus Policy. In interpreting an insurance policy, "[w]ords of common usage . . . are to be construed in their natural, plain, and ordinary sense." *Madison Constr. Co.*, 735 A.2d at 108. A court may inform its understanding of undefined terms by considering their dictionary definitions. *Id.* But such terms must also "be read in light of the context and the overall provisions of the policy in which [they] appear[]." *Jennings v. Hartford Fire Ins. Co.*, No. 90-3125, 1991 WL 68019, at *3 (E.D. Pa. Apr. 25, 1991) (citing *Luko v. Lloyd's of London*, 573 A.2d 1139, 1142 (Pa. Super. Ct. 1990)).

The Merriam-Webster Online Dictionary defines "work" as, inter alia,

**1** **:** activity in which one exerts strength or faculties to do or perform something:

    **a** **:** activity that a person engages in regularly to earn a livelihood . . .

    **b** **:** a specific task, duty, function, or assignment often being a part or phase of some larger activity

    **c** **:** sustained physical or mental effort to overcome obstacles and achieve an objective or result.

*Work*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/work (last visited October 17, 2018). Nautilus urges the Court to interpret the term broadly, asserting the first of these definitions, which links work to the employment context, is inapplicable in this case. *See* Nautilus Opp'n 14 & n.1. The Court disagrees that defining "work" broadly to include any activity in which a person exerts strength or faculties to do or perform something is appropriate here.

Given the context in which the term "volunteer worker" is used in the Nautilus Policy—as one of the types of workers, in addition to employees, for whom the Policy does not provide coverage for bodily injury claims—the definition of a volunteer worker as a person who is not an employee of the insured, but who "donates his or her work and acts at the direction of and within the scope of duties determined by [the insured]," can reasonably be understood to refer to a person who, while not an employee, stands in the shoes of an employee or otherwise has an employment-like relationship, albeit unpaid, with the insured. *Cf. Pupello v. Super Gym, Inc.*, No. CV065001716S, 2008 WL 1971029, at *1, 3 (Conn. Super. Ct. Apr. 23, 2008) (interpreting a policy exclusion for bodily injury to "employees," a term defined to include "any member, associate, leased worker, temporary worker or any person or persons loaned to or volunteering services to [the insured]," to "contemplate[] the exclusion of persons who served in an employment or at least employment-like relationship with the insured"). Consistent with this understanding, and with the aspect of the dictionary definition that ties "work" to the employment context, the term "work" within the definition of a volunteer worker can reasonably be understood to refer to activity of a type that would be performed by the insured's employees.[19]

---

[19] *Canopius U.S. Insurance, Inc. v. Than*, No. 11-6967, 2013 WL 961635 (E.D. Pa. Mar. 13, 2013), the main case on which Nautilus relies in support of its interpretation of the Volunteer Worker Exclusion, does not hold to the contrary. At issue in *Canopius* was whether a commercial general liability policy provided coverage for claims against an insured, a company in the hardwood floor business, by individuals injured in an explosion at a site where the insured was performing floor restoration. The plaintiffs in the underlying action were admittedly performing floor refinishing—the work the insured had been hired to do—at the time of the accident. The question was whether coverage for their claims was precluded by policy exclusions for bodily injury to employees and independent contractors of the insured. For purposes of the policy, the term "employee" was defined to include leased workers, temporary workers, casual labor, or volunteer workers. Siding with the insurer, the court held coverage was precluded regardless of whether the plaintiffs were properly classified as employees, volunteer workers, or independent contractors as they admittedly were doing work for the insured—i.e., performing floor refinishing—at the time of the accident. *See id.* at *4. Although the court in *Canopius* did not have occasion to address the meaning of the term "work," it is apparent from the nature of the

Applying this definition, the Court is not persuaded that Anderson donated her "work" to Bike & Build through her participation in the ME2SB ride. In arguing the complaint in the Underlying Action establishes that Anderson was donating her work to Bike & Build by biking and fundraising in connection with the ME2SB trip, Nautilus relies on the complaint's allegations that Anderson was a "volunteer rider" on the ME2SB "charity ride" arranged by Bike & Build as part of its business "arrang[ing] cross-country bicycle rides where participants raise money for charitable causes." Underlying Compl. ¶¶ 2, 5-6; *see also* Nautilus Mem. in Supp. of Mot. for Summ. J. 6-7; Nautilus Opp'n 12-13. Contrary to Nautilus's assertion, however, these allegations make clear that Anderson was not donating her work to Bike & Build by participating in the ME2SB ride. While the complaint alleges Bike & Build's business is "arrang[ing] cross-country bicycle rides," Underlying Compl. ¶ 2, it does not allege Anderson had any involvement in organizing the ME2SB trip. Nor is Anderson alleged to have played any role in leading the trip. Rather, the complaint characterizes Anderson as a participant (or rider) in a trip "planned, set up and supervised" by Bike & Build. *See id.* ¶¶ 2, 5, 7-10, 12, 21(c). That the complaint describes Anderson as a "volunteer rider" does not make her a "volunteer worker" because cycling by participants in the trip (as opposed to trip leaders who direct and supervise the trip) is not part of the business of organizing and managing the trip.

Moving beyond the allegations of the complaint in the Underlying Action, Nautilus argues the undisputed facts show Anderson was donating her work by biking on the ME2SB trip because she was serving as a representative of Bike & Build by wearing the required Bike & Build jersey

insured's business and the activity the injured plaintiffs were performing at the time of the accident that the injured plaintiffs were engaged in activity of a type that would be performed by the insured's employees. *Canopius* is thus consistent with the understanding of the term "work" applied herein.

while riding her bike and because she had been assigned by Bike & Build to ride in the sweep position on the day of the accident.   While having riders on the road in Bike & Build jerseys may have furthered Bike & Build's mission to raise awareness of affordable housing, neither the fact that Anderson was part of a group visibly associated with Bike & Build nor the fact that she was expected to perform chores while on trip, including serving as a sweep rider on a rotational basis, is not enough to change the nature of her role from that of participant in a ride organized by Bike & Build to that of worker for Bike & Build.   The same is true of Anderson's fundraising activity. As a prospective rider, Anderson had to raise money to fund her participation in the trip. However, she did not thereby become a worker for Bike & Build.[20]   Because Anderson was not donating her work to Bike & Build by biking and fundraising as part of the ME2SB trip, and was therefore not a volunteer worker for Bike & Build, the Court concludes the Volunteer Worker Exclusion in the Nautilus Policy is inapplicable.

While the United Specialty Policy follows form to the underlying Nautilus Policy and is subject to any exclusions in that Policy, the United Specialty Policy also includes a separate Employee Exclusion, which precludes coverage for

"Injury or damage" to:

(1)     An "employee" of the insured arising out of and in the course of:

---

[20] As Bike & Build notes, moreover, Anderson had completed all of the required fundraising and secured sufficient donations to fund her participation in the ME2SB ride before the trip began. *See* Anderson Dep. 37-38, 40; Drebitko Dep. 87.   The donations Anderson obtained were not contingent upon whether she actually participated in the ride.   *See* Drebitko Dep. 87.   Rather, as explained in Bike & Build's Participants Manual, in the event a rider dropped out of a trip, all money the rider had raised would be "considered a donation to Bike & Build" and would "not be refunded to donors."   Nautilus Ex. I at BIKE0001219; *see also id.* at BIKE0001253.   Although Anderson may have received additional donations after the start of the trip via her web page on the Bike & Build website, which remained active during the trip, she was not engaged in fundraising at the time of the accident.   *See* Anderson Dep. 15-16, 85-86.

(a) Employment by the insured; or

(b) Performing the duties related to the conduct of the insured's business . . . .

United Specialty Ex. G at USIC000035.   Elsewhere in the Policy, the term "employee" is defined to include "a leased worker, a temporary worker and a volunteer worker."   *Id.* at USIC000029.

Although the term "volunteer worker" is not specifically defined in the United Specialty Policy, the Court's conclusion that Anderson was not a worker for Bike & Build for purposes of the Nautilus Policy applies equally to the United Specialty Policy.   Hence, the Court also concludes the Employee Exclusion in the United Specialty Policy does not preclude coverage for the claims in the Underlying Action.

## 2.    Participant/Athletic or Sports Participants Exclusions

The Participant Exclusion in the Nautilus Policy precludes coverage for bodily injury to "participants" in certain types of athletic, sports, or entertainment "events" managed, operated, or sponsored by the insured.   Specifically, the Participant Exclusion provides that the Policy's bodily injury liability coverage "does not apply to 'bodily injury' or medical payments to any 'participant' while in the 'activity area.'"   Bike & Build Ex. D at BIKE0001513.   For purposes of this Exclusion, the terms "activity area," "event," "limited duration," and "participant" are defined as follows:

**1.** "Activity area" means any site specifically set aside for the purpose of preparing for, participation in, or assembly before, during or after, any "event" including, but not limited to, the arena, chute, corral, course, field, infield, pit, ring, sideline, stage, or track.

**2.** "Event" means any activity of an athletic or sports, or entertainment nature of "limited duration" that you manage, operate, or sponsor including, but not limited to, a carnival, circus, concert, contest, demonstration, exhibition, fair, game, match, parade, race, rodeo, show, stunting activity, or theatrical performance.

**3.** "Limited duration" means a time period that can be established by a beginning

and ending date.

    **4.** "Participant" means any person practicing, preparing or rehearsing for, instructing, participating or sparring in, any "event" including, but not limited to, animal handlers, announcers, assistants, attendants, coaches, cheerleaders, clowns, contestants, "employees", entertainers, independent contractors, mechanics, musicians, officials, operators, producers, promoters, referees, singers, speakers, sponsors, stage crews, stock contractors, "temporary workers", vendors or their "employees", "volunteer workers", or workers.

*Id.*

    Bike & Build argues the Participant Exclusion is inapplicable here because the stretch of highway where Anderson was injured was not an "activity area" within the meaning of the Policy. Bike & Build contends the list of examples of sites that may constitute an activity area within the definition of the term "activity area" shows that an activity area must be a "definitively confined space[] that can be controlled by the insured for the insured's exclusive use," such as an arena or concert hall, and cannot be interpreted to include an "expansive geographical area" like the cross-country route for the ME2SB ride.   Bike & Build's Mem. in Supp. of Mot. for Summ. J. 25-26.   Bike & Build also relies on the definition of the term "event," noting the examples of the types of activities that may constitute an event are activities "that are confined within a specifically 'set aside' space for the sole and exclusive use of the insured and its guests."   *Id.* at 26.

    Nautilus disputes that the term "activity area" is limited in the manner suggested by Bike & Build, noting the list of sites that can be an "activity area" is non-exclusive and includes sites like a course or a field, which may not be "definitively confined spaces that can be controlled by the insured."   In Nautilus's view, the site of the accident in this case was an "activity area" because it was on the route for the ME2SB ride, which was "mapped out and planned, created, set up and supervised by Bike & Build."   Nautilus Mem. in Supp. of Mot. for Summ. J. 8, *see also id.* at 13 (noting the route selected by Bike & Build "was mapped out on cue sheets that identified the

specific roads and distances for the particular day").

Insofar as Bike & Build argues the term "activity area" is limited to "definitively confined spaces," this interpretation appears to be overly restrictive. Under the definitions set forth in the Participant Exclusion, a course may constitute an activity area if it is specifically set aside for an event such as a race. Because a race course may constitute an activity area, it is unlikely that the term "activity area" is limited "definitively confined spaces."

Nevertheless, the Court agrees with Bike & Build that the phrase "specifically set aside" in the definition of an "activity area" is ambiguous. While Bike & Build argues the term "set aside" means something akin to selected or designated, this term can also reasonably be interpreted to require that the area be under the insured's control or reserved for the insured's use. *See Set aside*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/set%20aside (last visited Oct. 17, 2018) (defining the phrase "set aside" to mean "to put to one side" or "to reserve for a purpose"). Under this interpretation, even the course for a race taking place over an "expansive geographical area" could constitute an "activity area" if, for example, the course were reserved for use by race participants.

Although the complaint in the Underlying Action alleges that at the time of the accident, Anderson was "traveling on a route that had been planned, set up and supervised by . . . Bike & Build," Underlying Compl. ¶ 12, nothing in the complaint or the record in this case suggests the route was "specifically set aside" for participants in the ME2SB ride. On the contrary, the complaint faults Bike & Build for, inter alia, requiring its riders to travel along an open highway in close proximity to vehicles traveling at high speeds and for not closing portions of the highway during the ride. *See id.* ¶ 21(h), (i), (l)-(n), (p)-(r); *see also id.* ¶ 9 (alleging that before the riders on the ME2SB trip set out on the morning of the accident, Bike & Build supervisors emphasized

that the day's route "would be a dangerous ride, as the shoulder of the road was very narrow and the cars would be traveling at high speeds, sometimes only inches away from their bicycles"). Construing the ambiguity in the definition of an "activity area" in favor of Bike & Build, the insured in this case, and construing the Participant Exclusion strictly against Nautilus, the Court finds the Participant Exclusion does not preclude coverage for the claims in the Underlying Action.

The United Specialty Policy contains a similar exclusion for "Athletic or Sports Participants," which precludes coverage for:

> "Injury or damage" to any person while practicing for; promoting, participating in; observing or officiating at:
>
> a.  Any sports or athletic contest; or
>
> b.  Any athletic endeavor; or
>
> c.  Any sports or athletic exhibition;
>
> whether:
>
> d.  You sponsor, either by providing financial, promotional or technical support or by only lending the use of your name, or by assisting in the planning, promotion, or execution of that event, contest, endeavor or exhibition, or
>
> e.  You are not a sponsor but you or your "employees" are guests are participants.

United Specialty Ex. G at USIC000026.

The applicability of this Athletic or Sports Participants Exclusion turns on whether the ME2SB ride was an "athletic endeavor" within the meaning of the United Specialty Policy. The remaining requirements for the Exclusion are clearly satisfied here, as Anderson was injured while participating in the ME2SB ride, and Bike & Build sponsored the ME2SB by, inter alia, "assist[ing] in the planning, promotion, or execution" of the ride. *See* Underlying Compl. ¶¶ 4, 7, 12 (alleging Bike & Build was responsible for creating, planning, setting up, and supervising the

route for the ME2SB trip, which "was mapped out and planned from Bike & Build's headquarters in Philadelphia"); *see also id.* ¶ 19 (alleging that while participating in the ME2SB trip, Anderson was at all times "under the direction and supervision of . . . Bike & Build").

Bike & Build argues the term "athletic endeavor" is ambiguous and can reasonably be interpreted as a competition. Under this interpretation, the ME2SB ride would not qualify as an "athletic endeavor" because it was not a race but a ride in which riders could travel at their own pace, stop to eat at restaurants along the route, and ride in the passenger van.

The Court disagrees. The Athletic or Sports Participants Exclusion applies when a person is injured while participating in one of three categories of events: (a) "[a]ny sports or athletic contest," (b) "[a]ny athletic endeavor," or (c) "[a]ny sports or athletic exhibition." USIC000026. Injuries sustained while participating in an athletic competition would fall within the first of these categories—"[a]ny sports or athletic contest"—as a contest is, in essence, a competition. *See Contest*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/contest (last visited Oct. 17, 2018). Hence, the term "athletic endeavor" cannot reasonably be interpreted to mean athletic competition, as such an interpretation would render the second category of events redundant. *See Am. Auto Ins. Co. v. Murray*, 658 F.3d 311, 321 (3d Cir. 2011) (holding where possible, a court should interpret an insurance policy "so as to avoid ambiguities and give effect to all of its provisions" (citation omitted)); *Toffler Assocs., Inc. v. Hartford Fire Ins. Co.*, 651 F. Supp. 2d 332, 344 n.3 (E.D. Pa. 2009) (holding a court must avoid interpreting an insurance policy "in a way that makes any term meaningless or superfluous"). And while the term "athletic endeavor" is not defined in the United Specialty Policy, the Court agrees with United Specialty that a 3,987-mile cross-country bike ride qualifies as such an endeavor under any reasonable definition of the term. *See Athletic*,

Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/athletic (last visited Oct. 17, 2018) (defining "athletic" as, inter alia, "vigorous" or "active"). The Court therefore concludes the Athletic or Sports Participants Exclusion in the United Specialty Policy precludes coverage for the Underlying Action.

**CONCLUSION**

For the reasons set forth above, the Court concludes Nautilus and United Specialty have shown the Auto Exclusion in the Nautilus Policy and the Athletic or Sports Participants Exclusion in the United Specialty Policy unambiguously preclude coverage for Anderson's claims against Bike & Build in the Underlying Action. Accordingly, Nautilus and United Specialty's motions for summary judgment will be granted, and Bike & Build's motion for summary judgment against each insurer will be denied. An appropriate order follows.